UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| THE LASH GROUP, LLC, | Case No. 2:24-cv-00843-ART-EJY |
| Plaintiff / Counter-Defendant, | **ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS** |
| v. | (ECF No. 26) |
| DAYA MEDICALS, INC., | |
| Defendant / Counterclaimant. | |

This case involves a contract dispute between two medical companies. Plaintiff and Counter-Defendant, The Lash Group, LLC ("Lash Group") sued Defendant and Counterclaimant Daya Medicals, Inc. ("DayaMed") for breach of contract, alleging that DayaMed failed to pay several invoices. DayaMed counterclaimed for breach of contract, breach of the implied covenant of good faith and fair dealing, and several tort claims. Before the Court is Lash Group's motion to dismiss DayaMed's counterclaims (ECF No. 26). Lash Group moves to dismiss all claims except the claim for breach of contract. For the following reasons, the Court grants the motion.

## I.    BACKGROUND

In August 2021, DayaMed entered into a service agreement with Lash Group, pursuant to which Lash Group agreed to provide services for DayaMed and DayaMed agreed to pay Lash Group for its services. (ECF No. 1 at ¶¶ 6, 7; ECF No. 23 at ¶ 6.) Neither DayaMed's complaint nor Lash Group's countercomplaint identifies exactly what those services are or what the agreement involved, but the contractual dispute concerns nonpayment for those services. (*See* ECF Nos. 1, 23.)

### A. Lash Group's Allegations

Lash Group alleges that DayaMed did not pay Lash Group for several

1

invoices that it submitted pursuant to the service agreement in 2022, totaling over $800,000. (ECF No. 1 at ¶ 16, 19.) Lash Group alleges that the service agreement provided that if DayaMed disputed any portion of an invoice, DayaMed would pay the undisputed amount and notify Lash Group of its dispute within fifteen days of the invoice. (*Id* at ¶ 10.) Lash Group alleges that it provided the services agreed upon from January to May 2022 and timely issued invoices. (*Id.* ¶¶ 12, 13.) DayaMed did not notify Lash Group of any disputes. (*Id* at ¶ 14.) In April 2022, Lash Group notified DayaMed that it intended to terminate providing services on May 16, 2022, unless it received payment for the January, February, and March invoices by May 13, 2022. (*Id* at ¶ 15.) DayaMed did not pay those invoices and Lash Group ceased providing services on May 16, 2022. (*Id* at ¶ 16.) Lash Group issued invoices for the services provided in April and May of 2022 and again did not receive payment. (*Id* at ¶ 19.) Lash Group asserts four claims against DayaMed: breach of contract, breach of the implied covenant of good faith and fair dealing, breach of account stated, and unjust enrichment. (ECF No. 1 at ¶¶ 3–6.)

**B. DayaMed's Allegations**

In response, DayaMed admits entering into a contract but alleges that Lash Group "did not perform its contractual obligations owed to DayaMed to the contractually required standard." (ECF No. 23 at ¶ 7.) DayaMed alleges that Lash Group "overcharged and artificially increased the sums owed on its purported invoices while simultaneously underperforming or failing to perform contractual obligations." (*Id.* at ¶ 8.) DayaMed asserts that it "outlined some of these deficiencies in a communication dated July 18, 2022." (*Id.* at ¶ 9.) For example, Lash Group's invoices charged "1.65 quantities of a monthly fee in just one month in derogation of the contract." (*Id.* at ¶ 10.) There was also a "$55,000 charge for RN Coordinator which would have been sufficient to serve 5,000 patients, not the 20-30 patients that existed at the height of Lash Group's involvement." (*Id.* at ¶

11.) DayaMed alleges that over $637,000 of the $816,000 invoiced is in dispute. (*Id.* at ¶ 13.) DayaMed also alleges that Lash Group failed to perform by "sometimes directly risking patients' wellbeing," for example by "[leaving] multiple prescriptions for the same medication active in patients' files resulting in patients receiving double and sometimes triple the medication." (*Id.* at ¶ 14.) DayaMed further alleges that Lash Group was provided "a specially crafted and curated list of 1,701 potential patients/customers that Lash Group agreed to contact and attempt to convert into ongoing users." (*Id.* at ¶ 16.) Lash Group's representative, Bob Landers, represented that he anticipated the "conversion rate into clients/customers" from this list would be over ninety percent, when in fact it was just 1.2 percent. (*Id.* at ¶ 18.) DayaMed brings counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, negligent misrepresentation, intentional misrepresentation, fraudulent inducement, negligence, and declaratory relief. (ECF No. 23.)

Lash Group moves to dismiss all of DayaMed's counterclaims under Rule 12(b)(6) and Rule 9, except the counterclaim for breach of contract. (ECF No. 23 at 9.)

## II.    LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to

relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Under this standard, a district court must accept as true all well-pleaded factual allegations in the complaint and determine whether those factual allegations state a plausible claim for relief. *Id.* at 678–79.

Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." This particularity standard requires alleging "the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (cleaned up). Allegations under Rule 9(b) must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Id.*

## III.    JURISDICTION

District courts have original jurisdiction over civil actions where the amount in controversy exceeds $75,000 and is between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332. Lash Group is a Delaware corporation with principal place of business in Pennsylvania and DayaMed is a Canadian corporation with principal place of business in Reno, Nevada. (ECF No. 1 at ¶ 3; ECF No. 23 at ¶ 2.) The amount in controversy exceeds $75,000. (ECF No. 1 at ¶ 3.) Accordingly, subject matter jurisdiction is proper.

## IV.    CHOICE OF LAW

Lash Group argues that all claims should be determined under Delaware law, but analyzes the claims under both jurisdictions, arguing that the result is the same. (ECF No. 26 at 5.) DayaMed does not dispute that the contract claims should be analyzed under Delaware law, but "reserves the right to further brief" the issue of whether the tort claims should be determined under Nevada law. (ECF No. 32 at 4.) It, too, argues that the result is the same under both

jurisdictions because there are only minimal differences between the two state's laws. (*Id.* at 4–5.)

### A. Contract Claims

District courts sitting in diversity apply the forum state's substantive law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). In Nevada, if the language of a contract is clear and unambiguous, the contract will be enforced as written. *Am. First Fed. Credit Union v. Soro*, 359 P.3d 105, 106 (Nev. 2015). Although the contract is not attached to the pleadings (*see* ECF Nos. 1, 23), the Court may go beyond the pleadings to consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 1175, 1186-87 (D. Nev. 2022) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

The contract's choice of law provision states: "this agreement shall be construed in accordance with the laws of the State of Delaware (without reference to its conflicts of law principles)." (ECF No. 26 at 5.) Because this provision is unambiguous, the Court applies Delaware law to the contract claims. *See, e.g., Kidneigh v. Tournament One Corp.*, 2:12-cv-02209-APG-CWH, 2013 WL 2245920, at *1 (D. Nev. May 21, 2013) (applying an unambiguous choice of law provision).

### B. Tort Claims

Courts in Nevada apply a three-step framework to determine whether tort-law claims fall within the scope of a choice-of-law clause, considering: (1) "whether the parties intended for tort claims to be governed by a choice-of-law clause in a related contract between them"; (2) "whether the tort claims relate 'to the interpretation of the contract;'" and (3) "whether the tort claims involve the same operative facts as a parallel breach-of-contract claim." *Nail v. Lens.com*, 2:24-cv-01149-JAD-EJY, 2024 WL 4477012, at *2 (D. Nev. Oct. 11, 2024) (citing *Tuxedo Int'l Inc. v. Rosenberg*, 251 P.3d 690, 699-70 (Nev. 2011)). The court only

proceeds beyond the first step if the intent of the parties is ambiguous. *Id.*

The choice of law provision here states that the agreement shall be "construed" in accordance with Delaware law. (ECF No. 26 at 5.) By its plain terms, the provision does not include related tortious conduct. *See, e.g., Morgan v. Bash,* No. 219CV00546JADBNW, 2021 WL 601871, at *2 (D. Nev. Feb. 16, 2021) (choice-of-law provision concerning contract's "validity, construction, performance, and effect" does not include tortious conduct). Because neither party has fully briefed this issue, the Court assumes without deciding that Nevada law applies to the tort claims.

## V.    DISCUSSION

Lash Group moves to dismiss DayaMed's counterclaims for breach of the covenant of good faith and fair dealing (Count 2), negligent misrepresentation (Count 4)[1], intentional misrepresentation (Count 5), fraudulent inducement (Count 6), negligence (Count 7), and declaratory relief (Count 8). The Court addresses each in turn.

### A. Breach of the Covenant of Good Faith and Fair Dealing (Count 2)

"Under Delaware law, an implied duty of good faith and fair dealing is interwoven into every contract." *Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007) (citing *Chamison v. HealthTrust, Inc.*, 735 A.2d 912, 920 (Del. Ch. 1999)). "In order to plead successfully a breach of an implied covenant of good faith and fair dealing, the plaintiff must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Id.* at 581–82 (citing *Fitzgerald v. Cantor*, No. C.A. 16297-NC, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)). "[O]ne generally cannot base a claim for breach of the implied covenant on conduct authorized by the terms of the agreement." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441

---

[1] DayaMed's countercomplaint does not include a third count.

(Del. 2005).

DayaMed alleges that Lash Group breached the implied covenant of good faith and fair dealing by "among other things, performing in a manner that was unfaithful to the purpose of the Contract" and by "deliberately contraven[ing] the requirements, intention, and spirit of the contract." (ECF No. 23 at ¶¶ 41, 42.) Lash Group argues that this counterclaim should be dismissed because it contains only conclusory statements. The Court agrees. DayaMed does not allege a specific implied contractual obligation that Lash Group breached. The Court is unable to discern from the countercomplaint which factual allegations relate to the breach of contract, and which relate to the breach of the implied covenant.

Accordingly, the Court grants Lash Group's motion to dismiss DayaMed's counterclaim for breach of the implied covenant. The counterclaim is dismissed without prejudice.

### B. Negligent Misrepresentation (Count 4)

To state a claim for negligent misrepresentation in Nevada, a plaintiff must allege that the defendant (1) "in the course of [its] business, profession or employment, or in any other action in which [it] has a pecuniary interest, [(2)] supplie[d] false information [(3)] for the guidance of others in their business transactions" and (4) caused pecuniary loss (5) by the plaintiff's "justifiable reliance upon the information," (6) if defendant "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998). Courts in the Ninth Circuit have held that claims for negligent misrepresentation must meet Rule 9(b)'s particularity requirements. *Nevada Rest. Servs., Inc. v. Factory Mut. Ins. Co.*, No. 222CV01104RFBVCF, 2023 WL 2572301, at *3 (D. Nev. Mar. 20, 2023) (collecting cases).

DayaMed alleges that Lash Group "misrepresented its competence, experience, and ability to perform the services contemplated in the Contract

including its ability to convert a curated list of potential customers into customers of DayaMed," that DayaMed relied upon those representations, that those representations were false, and that DayaMed suffered damages. (ECF No. 23 at ¶¶ 45–51.) DayaMed alleges that Lash Group's representative, Bob Landers, "expressly represented that he anticipated the conversion rate into clients/customers of Lash group from this curated list would be in excess of ninety percent" but that the conversion rate was just 1.2 percent. (ECF No. 23 at ¶ 17.)

Lash Group argues that this claim fails because it is "premised on Lash Group's alleged promise of future performance," citing *Cundiff v. Dollar Loan Ctr. LLC*, 726 F. Supp. 2d 1232, 1238 (D. Nev. 2010). (ECF No. 26 at 7.) In *Cundiff*, the court acknowledged that "Nevada has not addressed whether a misrepresentation as to future performance can be negligent" and concluded that "Nevada would hold that a misrepresentation as to future performance cannot be negligent because such a statement is either fraudulent, *i.e.*, the person never held that intention at the time he made the statement, or it was not a misrepresentation at all, the person simply later failed to perform as promised." 726 F. Supp. 2d at 1238. Several courts in this district have since followed that prediction of how the Nevada Supreme Court would rule on this issue. *See Edry v. Hometown Equity Mortg., LLC,* No. 2:22-CV-00804-MMD-VCF, 2023 WL 3250830, at *5 (D. Nev. Jan. 31, 2023) (collecting cases). The Court is persuaded by those cases and finds that DayaMed's claim fails because it based on a promise of future performance.

Accordingly, the Court grants Lash Group's motion to dismiss DayaMed's counterclaim for negligent misrepresentation. Count 4 is dismissed without prejudice.

8

**C. Intentional Misrepresentation (Count 5) and Fraudulent Inducement (Count 6)**

Lash Group argues that DayaMed's fraud claims should be dismissed for failure to plead with the particularity required under Rule 9(b). "Intentional misrepresentation is established by three factors: (1) a false representation that is made with either knowledge or belief that it is false or without a sufficient foundation, (2) an intent to induce another's reliance, and (3) damages that result from this reliance." *Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007). To establish fraudulent inducement, a plaintiff must show: "(1) a false representation made by [the defendant], (2) [the defendant's] knowledge or belief that the representation was false (or knowledge that it had an insufficient basis for making the representation), (3) [the defendant's] intention to therewith induce [the plaintiff] to consent to the contract's formation, (4) [the plaintiff's] justifiable reliance upon the misrepresentation, and (5) damage to [the plaintiff] resulting from such reliance." *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004).

DayaMed alleges that Lash Group "made misrepresentations to DayaMed concerning its competence, experience, and ability to perform the services contemplated in the Contract including its ability to convert a curated list of potential customers into customers of DayaMed." (ECF No. 23 at ¶ 53.) This claim appears to be based on the allegation that Bob Landers represented that the client conversion rate would be much higher than it turned out to be. (*Id.* at ¶ 17.) DayaMed alleges that Bob represented that the "conversion rate into clients/customers" would be over ninety percent, and that "after contacting 759 potential patients, Lash Group enrolled only nine . . . patients," representing a drastically lower "conversion rate" of 1.2 percent. (*Id.*) DayaMed makes the same allegations in support of its claim for fraudulent inducement. (*Id.* at ¶¶ 61–68.)

These allegations do not sufficiently set out the "who, what, when, where,

and how" required to satisfy the heightened pleading requirement of Rule 9(b). DayaMed does not specify when, where, or how Landers made these representations. The Court therefore grants Lash Group's motion to dismiss DayaMed's counterclaim for intentional misrepresentation. Counts 5 and 6 are dismissed without prejudice.

### D. Negligence (Count 7)

Lash Group argues that DayaMed's negligence claim should be dismissed for failure to allege duty. To state a claim for negligence, a plaintiff must allege: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages. *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009). While the tort of negligence can be committed by parties to a contract, the alleged breach must be of a duty imposed by law independent of any contractual duty. *Contreras v. Am. Fam. Mut. Ins. Co.*, 135 F. Supp. 3d 1208, 1220 (D. Nev. 2015).

Here, DayaMed does not allege an independent duty besides the duty to fulfill the terms of the contract. DayaMed alleges a "duty to accurately invoice for health care services provided as established by applicable regulatory requirements," but does not cite to any specific statutes or regulations in its pleading or briefing. (ECF No. 23 at ¶ 70.) DayaMed alleges a duty "to use reasonable care and competence when contacting clients on a curated list of potential DayaMed customers." (*Id.*)  But this list appears also to be a part of the contract. DayaMed does not point to any specific regulatory requirements, and these conclusory allegations are insufficient to establish duty.

Accordingly, the Court grants Lash Group's motion to dismiss DayaMed's counterclaim for negligence. Count 7 is dismissed without prejudice.

### E. Declaratory Relief (Count 8)

Lash Group argues that DayaMed's final claim for declaratory relief should be dismissed because it is redundant and is based solely on past conduct. (ECF

No. 26 at 11.) In response, DayaMed argues that a judicial determination is necessary, but does not cite any authority in support of its argument. (ECF No. 32 at 17.) DayaMed seeks declaratory relief because it "desires a judicial determination of the parties' rights and obligations." (ECF No. 23 at ¶ 76.) The Court cannot ascertain from DayaMed's countercomplaint or from its response to the motion to dismiss what it is seeking under this claim or what allegations the claim is based upon. The Court therefore dismisses this claim as conclusory. *See, e.g., McGraw v. Kim,* No. 2:22-CV-01414-APG-NJK, 2023 WL 3170059, at *2 (D. Nev. Apr. 28, 2023) (dismissing claim for declaratory relief as conclusory where it did not set forth any relevant factual allegations).

The Court therefore grants Lash Group's motion to dismiss DayaMed's counterclaim for declaratory relief. Count 8 is dismissed without prejudice.

## VI.    CONCLUSION

Accordingly, the Court grants Lash Group's motion to dismiss (ECF No. 26). DayaMed's counterclaims for breach of the covenant of good faith and fair dealing (Count 2), negligent misrepresentation (Count 4), intentional misrepresentation (Count 5), fraudulent inducement (Count 6), negligence (Count 7), and declaratory relief (Count 8) are dismissed without prejudice and with leave to amend.

The Court grants DayaMed 30 days from the date of this order to file an amended countercomplaint.


DATED: August 13, 2025


_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE